## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

### COURT FILE NO.:

Kevin Keagle and Tabitha Fling, *on behalf of themselves and all others similarly situated,*
   Plaintiffs,

v.

Credit Bureau of Carbon County, Inc. dba CollectionCenter, Inc.,
   Defendant.

_____

### CLASS COMPLAINT AND JURY DEMAND
_____

### NATURE OF ACTION

1. Plaintiffs Kevin Keagle ("Mr. Keagle") and Tabitha Fling ("Ms. Fling") (collectively, "Plaintiffs") bring this putative class action against Defendant Credit Bureau of Carbon County, Inc. dba CollectionCenter, Inc. ("Defendant") pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, individually and on behalf of all other similarly situated.

### JURISDICTION, STANDING, AND VENUE

2. This Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

3. Plaintiffs have Article III standing to bring this action, as it seeks to redress conduct by Defendant that caused Plaintiffs to suffer intangible harms, which Congress

has made legally cognizable in passing the FDCPA. *See Spokeo, Inc. v. Robins*, 136 S.

Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016) (Congress is "well

positioned to identify intangible harms that meet minimum Article III requirements," and

thus "may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries

that were previously inadequate in law.'" (quoting *Lujan v. Defs of Wildlife*, 504 U.S.

555, 578 (1992)); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 WL

3671467, at *3 (N.D. Ill. July 11, 2016) ("Without the protections of the FDCPA,

Congress determined, the '[e]xisting laws and procedures for redressing these injuries are

inadequate to protect consumers.'" (quoting 15 U.S.C. § 1692(b)).

4.      Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), where

the acts and transactions giving rise to Plaintiffs' action occurred in this district and

where Defendant transacts business in this district.

## THE FAIR DEBT COLLECTION PRACTICES ACT

5.      Congress enacted the FDCPA to "eliminate abusive debt collection

practices, to ensure that debt collectors who abstain from such practices are not

competitively disadvantaged, and to promote consistent state action to protect

consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573,

577 (2010) (citing 15 U.S.C. § 1692(e)).

6.      To protect consumers and ensure compliance by debt collectors, "the

FDCPA is a strict liability statute." *Johnson v. Riddle*, 305 F.3d 1107, 1122 (10th Cir.

2002).

7.      The FDCPA is a "remedial statute," and so "should be construed liberally in favor of the consumer." *Riddle*, 305 F.3d at 1117.

8.      "A single violation of the FDCPA is sufficient to state a claim." *Soren v. Equable Ascent Fin., LLC*, No. 2:12-CV-00038, 2012 WL 2317362, at *2 (D. Utah June 18, 2012) (citing *Taylor v. Perrin*, 103 F.3d 1232, 1238 (5th Cir.1997)). "Plaintiffs who prove a violation of the FDCPA are entitled to statutory damages irrespective of the ability to prove actual damages." *Id.*

9.      Whether a collection letter violates the FDCPA is assessed under the least sophisticated consumer standard. "[T]he courts consider 'how the least sophisticated consumer—one not having the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer—understands the notice he or she receives." *Kalebaugh v. Berman & Rabin, P.A.*, 43 F. Supp. 3d 1215, 1220 (D. Kan. 2014) (quoting *Ferree v. Marianos*, 129 F.3d 130, 1997 WL 687693, at *1 (10th Cir. Nov. 3, 1997); *see also Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993) ("The basic purpose of the 'least-sophisticated consumer' standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd.").

## PARTIES

10.     Plaintiffs are natural persons who at all relevant times resided in the State of Colorado, County of Boulder, and City of Longmont.

11.     Plaintiffs are "consumers" as defined by 15 U.S.C. § 1692a(3).

12.     Defendant is an entity who at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect a "debt" from Plaintiffs, as defined by 15 U.S.C. § 1692a(5).

13.     Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

## FACTUAL ALLEGATIONS

14.     Plaintiffs are natural persons allegedly obligated to pay a debt.

15.     Plaintiffs' alleged obligation arises from a transaction in which the money, property, insurance, or services that are the subject of the transaction were incurred primarily for personal, family, or household purposes—namely, personal medical services (the "Debt").

16.     Defendant uses instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of any debts.

17.     Defendant regularly collects or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, another.

18.     In connection with the collection of the Debt, Defendant sent Plaintiffs written communication in or around October 2018.

19.     In response, Ms. Fling called Defendant to make payment arrangements on the Debt.

20.     During the call, Ms. Fling agreed that Plaintiffs would make payments of $25 each month.

21.     Ms. Fling authorized Defendant to electronically withdraw $25 from Plaintiffs' checking account on the fifth day of each month.

4

22.     Defendant informed Ms. Fling that Plaintiffs' first payment would necessarily include a one-time "convenience fee" of $3.

23.     On November 5, 2018, Defendant withdrew $28 from Plaintiffs' checking account which included the one-time "convenience fee" of $3.

24.     Upon information and belief, no law expressly permits Defendant to charge Plaintiffs with a $3 convenience fee for withdrawing payments from a consumer's checking account.

25.     Upon information and belief, the contract creating the Debt does not expressly authorize Defendant to charge Plaintiffs with a $3 convenience fee for withdrawing payments from a consumer's checking account.

26.     On December 5, 2018 and January 5, 2018, Defendant took the agreed-upon $25 from Plaintiffs' bank account.

27.     Upon information and belief, the creditor of the Debt subsequently retained a law firm to continue collection efforts.

28.     In connection with the collection of the Debt, the law firm sent Plaintiffs initial written communication dated December 28, 2018.

29.     A true and correct copy of the law firm's December 28, 2018 letter is attached as Exhibit A.

30.     The law firm's December 28, 2018 letter threatened:

Your FAILURE to pay has forced University of Colorado Health to declare you in default and authorize this firm to proceed with litigation. If you pay $18776.51, or make satisfactory arrangements with CollectionCenter, Inc., the collection agency managing the below account(s) for our client, we will not proceed.

> Your continued failure to pay in full may result in suit being filed against
> you, notwithstanding your rights stated on the back of this notice. If a
> judgment is rendered against you, we may, by law, seize any non-exempt
> assets including wages.

*Id.* (emphasis in original).

31.    Ms. Fling called Defendant on or about January 7, 2019 after receiving the

law firm's December 28, 2018 letter.

32.    Defendant's representative informed Ms. Fling that the $25 monthly

payment plan Plaintiffs had previously arranged with Defendant was not a large enough

payment to satisfy the Debt.

33.    Defendant's representative further informed Ms. Fling that unless Plaintiffs

increased their payment amount, both Plaintiffs would be served with a summons for a

lawsuit.

34.    Ms. Fling advised Defendant's representative that if it refused to honor

their payment arrangement, Plaintiffs would find a lawyer.

35.    In response, Defendant's representative stated that she needed to "look at

something," then hung up on Ms. Fling.

36.    Ms. Fling immediately called back Defendant's office.

37.    After getting no answer on the first two calls, Ms. Fling left a voicemail for

Defendant after her third call went unanswered.

38.    Defendant's voicemail greeting advised that its office returns voicemails it

receives within one business day.

39.    Ms. Fling left a detailed voicemail wherein she requested a return call.

6

40.     However, Defendant never returned Ms. Fling's call.

41.     In June 2019, Plaintiffs agreed to make monthly payments on the Debt in the amount of $50 beginning July 2019.

42.     On or about July 12, 2019, Ms. Fling called Defendant to set up monthly recurring payment from Plaintiffs' checking account.

43.     During the July 12, 2019 call, Ms. Fling authorized Defendant to electronically withdraw $50 from Plaintiffs' checking account on the 25th day of each month beginning July 25, 2019.

44.     Defendant's representative "Michelle" informed Ms. Fling that Plaintiffs needed to call in every three months to set up recurring payments.

45.     When Ms. Fling inquired as to why Defendant could not continue to withdraw the payments as authorized, Michelle condescendingly told Ms. Fling that it was Plaintiffs "responsibility" to call in every three months to set up the recurring payments.

46.     Michelle further informed Ms. Fling that each time Plaintiffs call to set up payment, Plaintiffs would be charged a $3 "convenience fee."

47.     Upon information and belief, no law expressly permits Defendant to charge Plaintiffs with a $3 convenience fee for withdrawing payments from a consumer's checking account.

48.     Upon information and belief, the contract creating the Debt does not expressly authorize Defendant to charge Plaintiffs with a $3 convenience fee for withdrawing payments from a consumer's checking account.

## CLASS ALLEGATIONS

49.     Plaintiffs repeat and re-allege each and every factual allegation above.

50.     Upon information and belief, Defendant's policy for setting up recurring payment plans from a consumer's checking account is twofold: 1) limit the duration of a recurring payment plan to a term of three months thus requiring the consumer contact Defendant's office at the end of the three month term to renew the recurring payment plan and 2) charge the consumer a "one-time" convenience fee of $3 each time the consumer sets up and/or subsequently renews the recurring payment plan.

51.     Upon information and belief, Defendant's policy is imposed on all consumers who set up recurring payment plans from a checking account.

52.     Plaintiffs bring this action on behalf of themselves and all others similarly situated.  Specifically, Plaintiffs seek to represent a class of individuals defined as:

> All persons in the State of Colorado to whom Defendant charged, within one year before the date of this complaint and in connection with the collection of a consumer debt, a $3 convenience fee for setting up and/or subsequently renewing a recurring payment plan.

53.     The proposed class specifically excludes the United States of America, the State of Colorado, counsel for the parties, the presiding United States District Court Judge, the Judges of the United States Court of Appeals for the Tenth Circuit, and the Justices of the United States Supreme Court, all officers and agents of Defendant, and all persons related to within the third degree of consanguinity or affection to any of the foregoing persons.

54.     The class is averred to be so numerous that joinder of members is impracticable.

55.     The exact number of class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery.

56.     The class is ascertainable in that the names and addresses of all class members can be identified in business records maintained by Defendant.

57.     There exists a well-defined community of interest in the questions of law and fact involved that affect the parties to be represented.  These common questions of law and fact predominate over questions that may affect individual class members.  Such issues include, but are not limited to: (a) the existence of Defendant's identical conduct particular to the matters at issue; (b) Defendants' violations of 15 U.S.C. § 1692 *et seq.*; (c) the availability of statutory penalties; and (d) attorney's fees and costs.

58.     The claims of Plaintiffs are typical of the claims of the class they seek to represent.

59.     The claims of Plaintiffs and of the class originate from the same conduct, practice, and procedure on the part of Defendant.  Thus, if brought and prosecuted individually, the claims of each class member would require proof of the same material and substantive facts.

60.     Plaintiffs possess the same interests and have suffered the same injuries as each class member. Plaintiffs assert identical claims and seeks identical relief on behalf of the unnamed class members.

61.     Plaintiffs will fairly and adequately protect the interests of the class and have no interest adverse to or which directly and irrevocably conflicts with the interests of other class members.

62.     Plaintiffs are willing and prepared to serve this Court and the proposed class.

63.     The interests of Plaintiffs are co-extensive with and not antagonistic to those of the absent class members.

64.     Plaintiffs have retained the services of counsel who are experienced in consumer protection claims, as well as complex class action litigation, who will adequately prosecute this action, and who will assert, protect and otherwise represent Plaintiffs and all absent class members.

65.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) and 23(b)(1)(B). The prosecution of separate actions by individual members of the class would, as a practical matter, be dispositive of the interests of other members of the class who are not parties to the action or could substantially impair or impede their ability to protect their interests.

66.     The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class, which would establish incompatible standards of conduct for the parties opposing the class. Such incompatible standards of conduct and varying adjudications, on what would necessarily be the same essential facts, proof and legal

theories, would also create and allow the existence of inconsistent and incompatible rights within the class.

67.    Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) in that Defendant has acted or refused to act on grounds generally applicable to the class, making final declaratory or injunctive relief appropriate.

68.    Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) in that the questions of law and fact that are common to members of the class predominate over any questions affecting only individual members.

69.    Moreover, a class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint in that: (a) individual claims by the class members will be impracticable as the costs of pursuit would far exceed what any one plaintiff or class member has at stake; (b) as a result, very little litigation has been commenced over the controversies alleged in this Complaint and individual members are unlikely to have an interest in prosecuting and controlling separate individual actions; and (c) the concentration of litigation of these claims in one forum will achieve efficiency and promote judicial economy.

### CLASS COUNTS

### COUNT I
### VIOLATION OF 15 U.S.C. § 1692e(2)(B)

70.    Plaintiffs repeats and re-alleges each factual allegation contained above.

71.    Within this broad prohibition, the FDCPA specifically forbids the "false representation of—any services rendered or compensation which may be lawfully

received by any debt collector for the collection of a debt." 15 U.S.C. § 1692e(2)(B); *see West v. Costen*, 558 F. Supp. 564 (W.D. Va. 1983) (holding that defendants violated § 1692e(2)(B) because "there was no legal basis for imposing the service charges. Therefore the service charges were compensation which cannot be 'legally received'").

72.     Upon information and belief, Defendant has no legal basis for charging Plaintiffs with a $3 convenience fee for withdrawing payments from a consumer's checking account.

73.     Therefore, Defendant violated 15 U.S.C. § 1692e(2)(B) by charging Plaintiffs with a $3 convenience fee for withdrawing payments from their checking account.

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

a)  Determining that this action is a proper class action, certifying Plaintiffs as class representatives under Rule 23 of the Federal Rules of Civil Procedure, and designating this Complaint the operable complaint for class purposes;

b)  Adjudging that Defendant violated 15 U.S.C. § 1692e(2)(B) with respect to Plaintiffs and the class they seek to represent;

c)  Awarding Plaintiffs and the class they seek to represent actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

d)  Awarding each Plaintiff such additional damages as the Court may allow in the amount of $1,000, pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i);

e)  Awarding such amount as the Court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser

of $500,000 or one percent of the net worth of the debt collector, pursuant
to 15 U.S.C. § 1692k(a)(2)(B)(ii);

    f)  Awarding Plaintiffs and the class they seek to represent reasonable
attorneys' fees and costs incurred in this action, pursuant to 15 U.S.C. §
1692k(a)(3);

    g)  Awarding Plaintiffs and the class they seek to represent any pre-judgment
and post-judgment interest as permissible under the law; and

    h)  Awarding such other and further relief as the Court may deem just and
proper.

**COUNT II**
**VIOLATION OF 15 U.S.C. § 1692f(1)**

74.    Plaintiffs repeat and re-allege each factual allegation contained above.

75.    The Act also prohibits the use of unfair or unconscionable means to collect
debts, including, but not limited to, the attempt to collect amounts to which the debt
collector is not legally entitled to collect. *See* 15 U.S.C. §§ 1692f, 1692f(1).

76.    "The 'permitted by law' language of the FDCPA has been construed to
mean 'an affirmative authorization, not just indulgent silence.'" *Champion v. Target Nat'l
Bank*, No. 1:12-CV-4196-RLV, 2013 WL 8699367, at *10 (N.D. Ga. Apr. 15, 2013)
(*quoting Shula v. Lawent*, No. 01 C 4883, 2002 WL 31870157, at *9 (N.D.Ill.Dec.23,
2002)).

77.    Debt collectors may not collect any amount if either "(A) state law
expressly prohibits collection of the amount or (B) the contract does not provide for

13

collection of the amount and state law is silent." *FTC Staff Commentary on the FDCPA*, 53 Fed. Reg. 50,097, 50,108 (Dec. 13, 1988)

78.     "[W]hen state law does not affirmatively authorize or prohibit service charges, a service charge may only be imposed if the customer expressly agreed to it in the contract which gives rise to the debt." *Weast v. Rockport Fin., LLC*, 115 F. Supp. 3d 1018, 1022 (E.D. Mo. 2015) (citing *Pollice v. Nat'l Tax Funding, L.P.,* 225 F.3d 379, 407–08 (3d Cir. 2000); *Tuttle v. Equifax Check,* 190 F.3d 9, 13 (2d Cir. 1999)).

79.     Defendant violated 15 U.S.C. § 1692f(1) by collecting a $3 convenience fee from Plaintiffs although it was not authorized to do so by the agreement creating the Debt or as permitted by law.

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

a) Determining that this action is a proper class action, certifying Plaintiffs as class representatives under Rule 23 of the Federal Rules of Civil Procedure, and designating this Complaint the operable complaint for class purposes;

b) Adjudging that Defendant violated 15 U.S.C. § 1692f(1) with respect to Plaintiffs and the class they seek to represent;

c) Awarding Plaintiffs and the class they seek to represent actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

d) Awarding each Plaintiffs such additional damages as the Court may allow in the amount of $1,000, pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i);

e) Awarding such amount as the Court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser

of $500,000 or one percent of the net worth of the debt collector, pursuant

to 15 U.S.C. § 1692k(a)(2)(B)(ii);

f)  Awarding Plaintiffs and the class they seek to represent reasonable

attorneys' fees and costs incurred in this action, pursuant to 15 U.S.C. §

1692k(a)(3);

g)  Awarding Plaintiffs and the class they seek to represent any pre-judgment

and post-judgment interest as permissible under the law; and

h)  Awarding such other and further relief as the Court may deem just and

proper.

## INDIVIDUAL COUNTS

### COUNT III
### VIOLATION OF 15 U.S.C. § 1692d

80.     Plaintiffs repeat and re-allege each factual allegation above.

81.     Among the protections in the FDCPA is the general prohibition against

"conduct the natural consequence of which is to harass, oppress, or abuse any person in

connection with the collection of a debt." 15 U.S.C. § 1692d.

82.     "Violations of § 1692d involve 'tactics intended to embarrass, upset, or

frighten a debtor.'" *Hoover v. Monarch Recovery Mgt., Inc.,* 888 F. Supp. 2d 589, 596

(E.D. Pa. 2012) (quoting *Donatelli v. Warmbrodt,* 2011 WL 2580442, at *9 (W.D.Pa.

June 28, 2011)).

83.    Defendant's representative deliberately hung up on Ms. Fling during the January 7, 2019 phone call after Ms. Fling advised the representative that she would look for a lawyer if Defendant refused to honor Plaintiffs existing payment plan.

84.    Ms. Fling immediately called Defendant back three times and left a voicemail message requesting a return call, but never received any type of response from Defendant.

85.    Therefore, Defendant violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiffs, in connection with the collection of an alleged debt.

86.    Defendant also violated 15 U.S.C. § 1692d when its representative Michelle condescendingly told Ms. Fling that it was Plaintiffs' "responsibility" to call in every three months to set up.

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

a)  Adjudging that Defendant violated 15 U.S.C. § 1692d;

b)  Awarding each Plaintiff statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), in the amount of $1,000.00;

c)  Awarding Plaintiffs actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

d)  Awarding Plaintiffs reasonable attorneys' fees and costs incurred in this action pursuant to 15 U.S.C. § 1692k(a)(3);

e)  Awarding Plaintiffs pre-judgment and post-judgment interest as permissible by law; and

f)  Awarding such other and further relief as the Court may deem proper.

## COUNT IV
## VIOLATION OF 15 U.S.C. § 1692e

87.     Plaintiffs repeat and re-allege each factual allegation contained above.

88.     The FDCPA creates a broad, flexible prohibition against the use of misleading, deceptive, or false representations in the collection of debts. *See* 15 U.S.C. § 1692e; *Hamilton v. United Healthcare of Louisiana, Inc*., 310 F.3d 385, 392 (5th Cir. 2002) (citing legislative history reference to the FDCPA's general prohibitions which "will enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed").

89.     Despite Defendant representing in its voicemail greeting that it responds to voicemails with 24 hours, Defendant ignored Ms. Fling's detailed voicemail requesting a call back.

90.     Therefore, Defendant violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of a debt.

91.     In addition, by refusing to continue taking the previously agreed upon monthly payment and instead sending the Debt back to the creditor, Defendant violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of a debt.

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

    a)  Adjudging that Defendant violated 15 U.S.C. § 1692e;

    b)  Awarding each Plaintiff statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), in the amount of $1,000.00;

c)  Awarding Plaintiffs actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

d)  Awarding Plaintiffs reasonable attorneys' fees and costs incurred in this action pursuant to 15 U.S.C. § 1692k(a)(3);

e)  Awarding Plaintiffs pre-judgment and post-judgment interest as permissible by law; and

f)  Awarding such other and further relief as the Court may deem proper.

## COUNT V
## VIOLATION OF 15 U.S.C. § 1692f

92.    Plaintiffs repeat and re-allege each factual allegation above.

93.    The FDCPA also prohibits the use of unfair or unconscionable means to collect debts. *See* 15 U.S.C. § 1692f.

94.    In addition to the non-exhaustive list of conduct that violates the FDCPA, § 1692f "allows a court to sanction improper conduct the FDCPA fails to address specifically." *Turner v. Professional Recovery Services, Inc*., 956 F. Supp. 2d 573, 580 (D.N.J. 2013) (quoting *Adams v. Law Offices of Stuckert & Yates*, 926 F. Supp. 521, 528 (E.D. Pa. 1996)).

95.    Defendant's representative deliberately hung up on Ms. Fling during the January 7, 2019 phone call after Ms. Fling advised the representative that she would look for a lawyer if Defendant refused to honor Plaintiffs' existing payment plan.

96.    Ms. Fling immediately called Defendant back three times and left a voicemail message, but never received any type of response.

97.     Therefore, Defendant violated 15 U.S.C. § 1692f by using unfair or unconscionable means against Plaintiffs in connection with an attempt to collect an alleged debt.

98.     Defendant also violated 15 U.S.C. § 1692f when it reneged on the payment plan it established with Plaintiffs and sent the Debt back to the creditor for continued collection efforts.

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

a) Adjudging that Defendant violated 15 U.S.C. § 1692f;

b) Awarding each Plaintiff statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), in the amount of $1,000.00;

c) Awarding Plaintiffs actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

d) Awarding Plaintiffs reasonable attorneys' fees and costs incurred in this action pursuant to 15 U.S.C. § 1692k(a)(3);

e) Awarding Plaintiffs pre-judgment and post-judgment interest as permissible by law; and

f) Awarding such other and further relief as the Court may deem proper.

## TRIAL BY JURY

99.     Plaintiffs are entitled to and hereby demands a trial by jury.

Dated: July 22, 2019

Respectfully submitted,

s/ Russell S. Thompson, IV
Russell S. Thompson, IV
Thompson Consumer Law Group, PC
5235 E. Southern Ave., D106-618

Mesa, AZ 85206
602-388-8898
866-317-2674 facsimile
rthompson@ThompsonConsumerLaw.com

s/ Amorette Rinkleib
Amorette Rinkleib
Thompson Consumer Law Group, PC
5235 E. Southern Ave., D106-618
Mesa, AZ 85206
602-899-9189
866-317-2674 facsimile
arinkleib@ThompsonConsumerLaw.com

Attorneys for Plaintiffs